PARIENTE, J.
The Unbundled Legal Services Special Committee II of The Florida Bar has filed a report proposing amendments to the Rules Regulating the Florida Bar and the Florida Family Law Rules of Procedure to address unbundled legal services (also known as “limited representation” or “discrete task representation”).[1] We conclude that the intent of the proposed amendments, which is to increase effective, efficient, and meaningful access to justice for otherwise unrepresented litigants, is consistent with the Court’s objectives, particularly in cases involving children and families. Accordingly, we adopt these amendments with modifications and additions as indicated. Further, on our own motion, we amend Florida Rule of Judicial Administration 2.060, Attorneys, and Florida Rule of Appellate Procedure 9.360, Parties, to reconcile those rules with the proposed amendments.
BACKGROUND
To gain perspective on these proposed amendments we review the Court’s initiatives in cases involving children and families. In adopting the recommendations for a model family court in 2001, this Court stated:
[0]ur goal continues to be the creation of “a fully integrated, comprehensive approach to handling all cases involving children and families,” while at the same time resolving family disputes in a fair, timely, efficient, and cost-effective manner. We also stress the importance of embracing methods of resolving disputes that do not cause additional emotional harm to the children and families who are required to interact with the judicial system. As the number of family court filings and post-judgment matters continues to skyrocket, we also must seek to enhance judicial productivity and conserve judicial resources.
In re Report of Family Court Steering Committee, 794 So.2d 518, 519-20 (Fla. *395 2001) (citations omitted). At that time, we noted that “an overwhelmingly large percentage of litigants in family law matters are unrepresented.” See id. at 527. We explained that “[a]pproximately 65% of initial filings in domestic relations cases involve self-represented litigants and 80% of post-judgment proceedings in domestic relations cases involve at least one unrepresented litigant.” Id. Further, according to a study of domestic relations cases conducted in Dade County, although 65% of initial filings began with at least one party unrepresented, by the time of the final judgment, that percentage had risen to 85%. Id. n. 11.
The history of these particular amendments began approximately four years ago. In November 1999, the Family Court Steering Committee (FCSC), as part of its ongoing efforts to address the needs of pro se litigants, studied the subject of unbundled legal services both in Florida and nationwide.[2] The successor committee to the FCSC, the Steering Committee on Families and Children in the Court, explained the results of this review:
During its work on th[is] issue, the FCSC discovered that some attorneys were already experimenting with the provision of unbundled legal services, although others, and some judges, were unfamiliar with the concept or thought it was impermissible. Judges, lawyers and litigants were sometimes uncertain of how to respond when a party received limited, unbundled, legal representation in a case. There was consensus on the FCSC that a rule was necessary to define the parameters of unbundled legal services and to give guidance on ethical questions.
The FCSC concluded that a rule was needed to provide structure. By setting forth the permissible parameters of unbundled legal services, the FCSC hoped to encourage lawyers to offer these services to the large number of litigants who would otherwise be unrepresented in family law matters.
In tandem with the efforts of the FCSC, former-Chief Justice Harding created the Access to Justice Task Force. The Task Force was a collaborative effort with membership from the judiciary, The Florida Bar and, in particular, the Family Law Section of the Bar. Part of the charge to the Task Force was to “[djevelop plans to facilitate local collaborative efforts to ensure that legal services are available and affordable [and to] make recommendations to the Supreme Court on how to build a system of services that improves access to a fair, timely, and meaningful resolution by informed family litigants.” In re Access to Justice Task Force, Fla. Admin. Order (Jan. 7, 2000) (on file with Clerk, Fla. Sup.Ct.).
As part of its recommendations to the Court, the Task Force concluded that the Bar should undertake a review of unbundled legal services. The Bar thereafter appointed a special committee to study the issue and report back to the Court. After receiving the report that made favorable recommendations regarding unbundled legal services, the Court determined that it would be preferable for the Bar to propose amendments to the rules for the Court’s consideration. Our charge to the Bar spe- *396 cifieally included the caveat that the Court has made “no prejudgment as to whether it will approve such rules” but that it was preferable to have “concrete rules before us to review in making any final decision.”
The Bar thereafter appointed a second special committee, the Unbundled Legal Services Special Committee II. Once the committee drafted and approved the rules, a copy of the rules was provided to a large number of interested groups.[3] The committee studied the recommendations of the groups and made some additional changes to the rules based on this input. The committee noted that the Conference of Circuit Court Judges, which includes the judges who preside over family law matters, supported the committee’s proposals, including the rule authorizing limited in-court representation in family law matters.
The committee published the proposed rules in the July 15, 2002, issue of The Florida Bar News. The committee amended the rules and submitted its report to this Court. This Court published the proposals twice for comment, in the September 1, 2002, and the November 1, 2002, issues of The Florida Bar News. The Court received only two comments: one in support of the rule filed on behalf of the Steering Committee on Families and Children in the Court, and a second by Circuit Judge Linda Vitale, Administrative Judge of the Family Division of the Seventeenth Judicial Circuit Court, who had specific suggestions regarding changes in the “notice” provisions.
Although only two comments were filed, the Court, through its scheduling order setting oral argument, requested that the parties be prepared at oral argument to address specific concerns regarding how the amendments would operate in practice and whether amendments to other rules were necessary. The areas of concern addressed in the scheduling order included: (1) when an attorney is retained to represent a pro se litigant in a limited matter, whether the court must hear from both the pro se litigant and the attorney on the limited matter; and (2) whether amendments to Florida Rule of Judicial Administration 2.060 and Florida Rule of Appellate Procedure 9.360 would also be necessary.
In order to ensure that the proposed rules received the broadest possible consideration, the Court also served numerous entities and individuals with the scheduling order, including the Bar, the Chief Judges of the Circuit Courts and the District Courts of Appeal, the Clerks of the Circuit Courts and the District Courts of Appeal, the Judicial Management Council and the Chair of the Family Law Rules Committee. The scheduling order also afforded the opportunity for supplemental com *397 ment. The Court received only one supplemental comment, filed by the Steering Committee on Families and Children in the Court, which was in favor of the rule and addressed each of the Court’s stated areas of concern.
AMENDMENTS
The committee proposes amending Rule Regulating the Florida Bar 4-1.2, Scope of Representation, to clarify when limited representation is permitted and to provide a procedure through which an attorney may limit the scope of the representation. The proposed amendment specifically requires that the client consent to the limited representation in writing. The committee proposes amending Rules Regulating the Florida Bar 4-4.2, Communication with Persons Represented by Counsel, and 4-4.3, Dealing with Unrepresented Persons, to specify when a person is considered to be unrepresented in the context of limited representation and clarify when the opposing lawyer may and may not communicate with the person directly.
In addition to the committee’s proposed amendments to the Rules Regulating the Florida Bar, which address the ethical obligations of attorneys in general regarding limited representation, the committee also proposes new Family Law Rule of Procedure 12.040, Attorneys, for use in family law cases only. In brief, this proposed rule provides: (1) how an attorney may be the attorney of record for only part of a proceeding; (2) when an attorney must obtain permission from the court to withdraw from or limit the scope of representation; (3) how an attorney of record in a limited proceeding or matter ends the representation when the purpose of the limited representation is fulfilled (i.e., by filing a notice of completion titled “Termination of Limited Appearance”); (4) what information the pro se litigant must provide when an attorney assists the litigant in the preparation of pleadings or other documents only; and (5) what information a limited appearance attorney must provide on the signature page of a pleading or other document.. Finally, the proposed new rule requires that during the time the attorney is making a limited appearance, pleadings or documents related to the limited representation must be served on both the attorney and the party.
ANALYSIS
Our goal in adopting rules to address unbundled legal services is to enhance access to justice by allowing individuals to contract to receive legal assistance or limited in-court representation on specific portions of their cases. Through the years, in keeping with the general mission of the judicial branch, this Court has strived to implement changes that improve access to justice for all of our citizens. As early as 1990, this Court noted:
This Court and The Florida Bar have regularly adopted programs to improve the accessibility of our judicial system. These include simplified proceedings in small claims court, probate, and dissolution of marriage matters; the development of simplified forms for a litigant’s pro se use; the establishment of citizen dispute settlement centers; and the recent implementation of mediation and arbitration programs designed to resolve disputes in an efficient and economical manner. This Court has repeatedly recognized its responsibility to assure access to the courts.
In re Amendments to Rules Regulating the Fla. Bar-1-3.1(a) & Rules of Judicial Admin.—2.065 (Legal Aid), 573 So.2d 800, 806 (Fla.1990). We have continued to seek new ways to facilitate access to justice for moderate- to low-income Floridians.
*398 In 1998, this Court adopted a rule governing self-help services and court-approved forms in the family law arena. We noted the observations of the Family Court Steering Committee at that time:
[T]he rule is needed to encourage self-represented litigants to obtain legal advice; to provide information concerning pro bono legal services, low cost legal services, and lawyer referral services; to provide forms, general information about the judicial process, and other information necessary to assist those who represent themselves; to clearly define the services provided to ensure that self-help programs do not provide legal advice through nonlawyers; to facilitate but not encourage self-representation; to assist in obtaining legislative funding for the programs; and to establish uniformity throughout the state to provide certain basic services in all circuits.
In re Amendments to the Fla. Family Law Rules of Procedure (Self Help), 725 So.2d 365, 366 (Fla.1998) (footnote omitted). We have since reiterated that our goal remains to “provide families and children with an accessible and coordinated means of resolving legal matters in a fair, efficient, and effective manner.” In re Report of Family Court Steering Committee, 794 So.2d at 523. Thus, we have not only encouraged access, but have been guided by the principle that access to justice must be meaningful by being fair, efficient, and effective. As a former president of the American Bar Association has observed, “the failure of our justice system to provide meaningful access falls hardest on those least able to afford a lack of access.” Robert Hirshon, Providing All Americans with a Key to the Courthouse, Judges’ J. 5 Winter 2001 at 5,5. Further, without some form of legal advice or representation, pro se litigants uneducated in the law are frequently denied access to justice:
Self-represented litigants encounter resistance from many judges when they seek their assistance regarding the proper procedures by which to prosecute their claims or defenses. An individual judge is unable to devote the necessary time to a full explanation of the litigation process for the self-represented litigant, and feels constrained from advising — or lending any other form of assistance in the trial process— by virtue of the rule requiring that judicial impartiality in appearance and in fact be maintained. Therefore, basic information, such as the necessary elements of the cause of action or defense raised, remains a secret of the law, judges, and attorneys.
Jona Goldschmidt, et al., Meeting the Challenge of Pro Se Litigation: A Report and Guidebook for Judges and Court Managers, 3M (1998). As the aforementioned report notes, “family law appears to be the most impacted by the growing trend to ‘go it alone.’ ” Id. at 15.
The availability of unbundled legal services has been viewed as being beneficial to both courts and litigants, especially in family law matters. For example, the administrator of the Self-Service Center in Maricopa, Arizona described the benefits of unbundled services as follows:
Clients who may have been fearful of attorneys or afraid that they could not afford a retainer for a divorce (in the nature of $1,200 to $2,000) were often interested in meeting with an attorney for a few hours, as needed, and thus getting a basic education and assistance as the divorce unfolded. For the most part these litigants continued to work their way through the system themselves. Once in operation, court personnel reported they were less often “buttonholed” by confused self-help litigants, *399 and self-help litigants often reduced the total number of hearings, trips, and/or appearances they made to the courthouse to conclude their matter.
Bradley A. Vauter, Unbundling: Filling the Gap, 79 Mich. B.J. 1688, 1689 (2000).
To date, at least five other states, Colorado, Wyoming, Maine, Washington, and New Mexico, have adopted rules governing unbundled legal services. See, e.g., Colo. R. Civ. P. 11(b); Colo. R. Prof. Cond. 1.2; Wyo. R. Prof. Cond. 1.2, App. 1; Me. C. Prof. Resp. R. 3.4(i); Wash. R. Prof. Cond. 1.2(c); N.M. R. Prof. Cond. 16-102C, 16-303E. Earlier this year, the Judicial Council of California adopted, in addition to other forms, a Notice of Limited Scope Representation form for use in family law proceedings. See Cal. Jud. Council Form FL-950. California also has adopted a rule of court that sets forth the procedure for a limited representation attorney to follow to be relieved as counsel. See Cal. Fam. L.R. 5.171. Further, the American Bar Association has endorsed this concept by adopting Model Rules of Professional Conduct that address unbundled legal services. See, e.g., Model Rules of Prof 1 Conduct R. 1.2 (2003) (allowing the lawyer to limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent); Model Rules of Profl Conduct R. 6.5 (2003) (discussing the provision of short-term limited legal services under the auspices of a program sponsored by a nonprofit organization or court without expectation by either the lawyer or the client that the lawyer will provide continuing representation in the matter).
In sum, unbundled legal services should enable pro se litigants to be better prepared when they appear in court, which should lead to less court time to process their cases. Thus, the litigants are likely to resolve their matters more expeditiously than if they had not received any legal guidance at all. Further, under new rule 12.040, a litigant in a family law case will be able to retain an attorney for limited in-court representation.
We emphasize that the goal of rule 12.040 is to increase access to justice for those litigants unable to afford full representation on all portions of their case. Our intent in adopting the rule is to allow an attorney to engage in limited representation on a discrete substantive task, such as child custody, child support, alimony, or equitable distribution, of to appear for a specific hearing, such as a hearing on a motion for attorneys’ fees. If the rule functions as we envision by allowing limited representation on portions of a case in which a litigant would otherwise be unrepresented, we are cautiously optimistic that justice will be facilitated and not frustrated. This is especially so if the discrete substantive task for which the representation is undertaken involves a particularly intricate or complex family law issue.
To ensure that rule 12.040 will not be utilized in a manner detrimental to the ends of justice, we explain the boundaries within which we expect the rule to operate. We agree with the view of the Steering Committee on Families and Children in the Court that when an attorney is retained to represent a pro se litigant on a limited matter in a family law case, the court should not be required to hear from both the attorney and the self-represented litigant on the same limited matter. When a party is represented by multiple attorneys, only one attorney speaks on an issue so that the other side is not “double-teamed.” We conclude that in fairness to the opposing party, the attorney and the pro se litigant should not both be allowed to argue on the same legal issue.
In addition, we do not énvision that the rule would permit an attorney to appear *400 solely for the purpose of making evidentia-ry objections on behalf of the family law litigant who is representing himself or herself on all matters. We are concerned that if the rule were construed to permit such a scenario, there would be no clear division between those portions of the case for which the attorney is responsible and those for which the pro se litigant is responsible. This could cause a great deal of confusion for both the court and opposing counsel and could actually frustrate the administration of justice. Although the trial judge has the ultimate discretion to decide what types of limited representation to allow in his or her courtroom, we emphasize that in adopting new rule 12.040, we do not envision that the rule would authorize the aforementioned type of “evidentiary objection” limited representation.
Further, to ensure the efficient administration of justice, all interested parties involved in a case in which limited representation is authorized must receive proper notice of hearings. Obviously, if an attorney is engaged in limited representation, it is critical that he or she receive notice of any court proceeding during which the subject of the limited representation will be heard. Judge Vitale noted in her comment that if attorneys are involved in a case for a short duration it may be difficult under the proposed new family law rule to properly serve notices of hearings on the appropriate individuals. Judge Vitale suggests that we amend the proposed rule to require that the address and telephone number of both the litigant and the attorney be on all pleadings, hearing notices, and notices of limited appearance. We agree and adopt Judge Vitale’s suggestion. Should an attorney receive a notice of a hearing that is not within the scope of the limited representation, it will be the attorney’s responsibility to notify the court and the opposing party that the attorney will not attend a court proceeding or hearing because it is outside the scope of the representation.
We also conclude that both the attorney and the litigant should be served with all pleadings that are filed during the duration of the limited representation. We anticipate that adding these additional safeguards to rule 12.040 will ensure that the appropriate person, whether it is the litigant or the attorney, receives all relevant notices, documents, and pleadings in the family law matter.
We firmly believe that the adoption of the proposed rules will increase access to justice for pro se litigants. Therefore, we encourage attorneys to offer discrete legal services as an element of their practices. In furtherance of this goal, we request that The Florida Bar, in conjunction with the Family Law Section of the Bar, develop informational brochures available to attorneys and the public that clarify the concept and the scope of limited l'epresentation. We request that these brochures be developed and made available within six months of the date of this opinion.
The litigant’s understanding of the scope of the limited representation is important in preventing unrealistic expectations on the part of the litigant, especially in connection with the extent of the attorney’s role during in-court proceedings. An attorney who decides to offer limited in-court representation in a family law matter must ensure that the pro se litigant understands the attorney’s obligations to the litigant. For example, prior to contracting for limited representation, the attorney should advise the litigant that the attorney’s ethical obligations only extend to the representation for which the attorney was retained. The attorney does not have an ethical obligation to the client on other discrete portions of the litigant’s case. *401 Thus, if a litigant retains an attorney for one issue to be addressed at a hearing and the litigant plans to argue on a different issue at the hearing, the attorney should explain to the litigant at the time of retention that the attorney will not interject himself or herself into the litigant’s argument even if the attorney feels that there is a better way to argue the issue. Further, the attorney should inform the client that if during the proceedings the litigant decides he or she would like the attorney to take over another portion of the litigant’s case for which the attorney was not initially retained, the client will need to execute a second consent form that encompasses the new portion of the case, and that such a broadening of the representation may increase the attorney’s fee.
We cannot detail every nuance of limited representation that the attorney must explain to the client. We offer these examples to demonstrate that when the client consents in writing to limited in-court representation, that consent must be informed. ' We amend the comment to Rule Regulating the Florida Bar 4-1.2 to emphasize this point. We further request that the Bar develop a standard informed consent form that may be used in limited in-court representation in family law proceedings. The Maine Supreme Court has adopted a detailed consent form under Rule 3.4 of the Maine Code of Professional Responsibility, Commencement and Continuation of Representation, and we direct the Bar to this form for guidance. As with the informational brochures, we request that a standard consent form be developed for use within six months of the date of this opinion.
OTHER RULE AMENDMENTS
In its report, the committee noted that if the proposed rules are adopted, Florida Rule of Judicial Administration 2.060, Attorneys, must be amended to eliminate any conflicts between that rule and the instant rules. We agree.
Florida Rule of Judicial Administration 2.010, Effective Date and Scope, provides that the Rules of Judicial Administration “shall supersede all conflicting rules and statutes.” This Court recently amended Florida Rule of Judicial Administration 2.060(i) to provide:
Termination of Appearance of Attorney. The appearance of an attorney for a party in a proceeding shall terminate only in one of the following ways:
(1) Withdrawal of Attorney. By order of court, where the proceeding is continuing, upon motion and hearing, on notice to all parties and the client, such motion setting forth the reasons for withdrawal and the client’s last known address.
(2) Substitution of Attorney. By order of court, under the procedure set forth in subdivision (h)(2) of this rule.
(3) Termination of Proceeding. Automatically, without order of court, upon the termination of a proceeding, whether by final order of dismissal, by final adjudication, or otherwise, and following the expiration of any applicable time for appeal, where no appeal is taken.
Amendments to the Fla. Rules of Judicial Admin. (2-Year Cycle), 851 So.2d 698, 710-11 (Fla.-2003). Under proposed rule 12.040(e), however, the attorney who appears of record in a limited proceeding or matter does not require the permission of the court to end the representation when the limited representation is over. The rule requires only that the attorney file a notice of completion titled “Termination of Limited Appearance.” Further, Florida Rule of Appellate Procedure 9.360(b), Attorneys, Representatives, and Guardians, provides that “[ajttorneys ... shall retain *402 their status in the court unless others are duly appointed or substituted.”
To avoid any inconsistency with the amendments we adopt today, we must also amend rules 2.060 and 9.360. Thus, on our own motion, we amend rule 2.060(i) to add new subdivision (4):
(4) Filing of Notice of Completion. For limited representation proceedings under Florida Family Law Rule of Procedure 12.040, automatically, by the filing of a notice of completion titled “Termination of Limited Appearance” pursuant to rule 12.040(c).
Further, we amend Florida Rule of Appellate Procedure 9.360(b) to include language stating that for limited representation proceedings under rule 12.040, representation terminates upon the filing of the notice of completion pursuant to rule 12.040(c). We conclude that the aforementioned amendments will resolve any inconsistency between these rules.
CONCLUSION
The concept of unbundled legal services is not new; it is well accepted in the context of business law, estate planning and mediation. Our goal in adopting rules governing unbundled legal services is to encourage attorneys to offer limited representation so that individuals who either cannot afford or do not desire full representation can obtain legal advice or representation on a discrete legal matter. It is our hope that such services will increase the public’s understanding of the legal process, thereby improving access to justice. Further, a better-educated pro se litigant will be able to present his or her case more effectively to the court, thereby facilitating an expeditious resolution of his or her legal matter. Finally, the limited representation in family law matters permitted under new rule 12.040 will assist pro se litigants in Florida’s court system by allowing them to have representation for at least part of their family law matter.[4]
Although we anticipate that our adoption of these amendments will increase access to justice for low- to moderate-income Floridians and recognize that providing affordable legal services is a laudable goal, we do have concerns that difficulties may arise in practice once rule 12.040 is enacted. Thus, we must remain vigilant to make sure that the rule operates as envisioned, in the courtroom, so that the judicial process is enhanced and not frustrated. It remains to be seen how a rule authorizing an attorney and a litigant to argue different portions of a case will operate in the courtroom. Further, the rule does not encompass all the possible scenarios of limited representation. In light of these concerns regarding the operation of rule 12.040 in practice, we direct the committee to monitor the implementation of the rule and any difficulties that arise, and report back to this Court within two years from the effective date of these amendments with recommendations for improvements or changes, if any.
The Court wishes to express its sincerest gratitude to the members of the committee for their efforts in seeking to improve pro se litigants’ access to courts. Further, we thank all individuals who filed comments with this Court, especially those who participated in oral argument.
Accordingly, we amend the Rules Regulating the Florida Bar, the Florida Family Law Rules of Procedure, the Florida Rules of Judicial Administration, and the Florida *403 Rules of Appellate Procedure as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The comment is offered for explanation only and is not adopted as an official part of the rules. The amendments shall become effective January 1, 2004, at 12:02 a.m.
It is so ordered.
ANSTEAD, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
APPENDIX
RULE 2.060. ATTORNEYS
(a) Generally. All persons in good standing as members of The Florida Bar shall be permitted to practice in Florida. Attorneys of other states who are not members of The Florida Bar in good standing shall not engage in the practice of law in Florida except to the extent permitted by rule 2.061.
(b) Staff Attorneys, Law Clerks, and Judicial Assistants Not to Practice. Except as provided in this subdivision, no one serving as a staff attorney, law clerk, or judicial assistant to a justice or judge of any court shall practice as an attorney in any court or before any agency of government while continuing in that position. Any attorney designated by the court may represent the court, or any judge in the judge’s official capacity, in any proceeding in which the court or judge is an interested party. An attorney formerly employed by a court shall not represent anyone in connection with a matter in which the attorney participated personally and substantially as a judicial staff attorney, law clerk, or judicial assistant.
(c) Pleadings to Be Signed. Every pleading and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in that attorney’s individual name whose address, telephone number, including area code, and Florida Bar number shall be stated, and who shall be duly licensed to practice law in Florida or who shall have received permission to appear in the particular case as provided in rule 2.061. The attorney may be required by the court to give the address of, and to vouch for the attorney’s authority to represent, the party. Except when otherwise specifically provided by an applicable rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney’s knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served.
(d) Party Not Represented by Attorney to Sign. A party who is not represented by an attorney shall sign any pleading or other paper and state the party’s address and telephone number, including area code.
(e) Form of Signature of Attorney, Party, or Other Person.
(1) The signatures required on pleadings and papers by subdivisions (c) and (d) of this rule may be:
(A) original signatures;
(B) original signatures that have been reproduced by electronic means, such as on electronically transmitted documents or photocopied documents; or
(C) any other signature format authorized by general law, so long as the *404 clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format.
(2)An attorney, party, or other person who files a pleading or paper by electronic transmission that does not contain the original signature of that attorney, party, or other person shall file that identical pleading or paper in paper form containing an original signature of that attorney, party, or other person (hereinafter called the follow-up filing) immediately thereafter. The follow-up filing is not required if the Supreme Court of Florida has entered an order directing the clerk of court to discontinue accepting the follow-up filing.
(f) Attorney Not to Be Surety. No attorneys or other officers of court .shall enter themselves or be taken as bail or surety in any proceeding in court.
(g) Stipulations. No private agreement or consent between parties or their attorneys concerning the practice or procedure in an action shall be of any force unless the evidence of it is in writing, subscribed by the party or the party’s attorney against whom it is alleged. Parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings, and agreements made at depositions that are incorporated in the transcript need not be signed when signing of the deposition is waived. This rule shall not apply to settlements or other substantive agreements.
(h) Appearance of Attorney. An attorney may appear in a proceeding in any of the following ways:
(1) By serving and filing, on behalf of a party, the party’s first pleading or paper in the proceeding.
(2) By substitution of counsel, but only by order of court and with written consent of the client, filed with the court. The court may condition substitution upon payment of, or security for, the substituted attorney’s fees and expenses, or upon such other terms as may be just.
(3) By filing with the court and serving upon all parties a notice of appearance as counsel for a party that has already appeared in a proceeding pro se or as co-counsel for a party that has already appeared in a proceeding by non-withdrawing counsel.
(i) Termination of Appearance of Attorney. The appearance of an attorney for a party in a proceeding shall terminate only in one of the following ways:
(1) Withdrawal of Attorney. By order of court, where the proceeding is continuing, upon motion and hearing, on notice to all parties and the client, such motion setting forth the reasons for withdrawal and the client’s last known address.
(2) Substitution of Attorney. By order of court, under the procedure set forth in subdivision (h)(2) of this rule.
(3) Termination of Proceeding. Automatically, without order of court, upon the termination of a proceeding, whether by final order of dismissal, by final adjudication, or otherwise, and following the expiration of any applicable time for appeal, where no appeal is taken.
(4) Filing of Notice of Completion. For limited representation proceedings under Florida Family Law Rule of Procedure 12,040, automatically, by the filing of a notice of completion titled “Termination of Limited Appearance” pursuant to rule 12.040(c).
*405 (j) Law Student Participation. Eligible law students shall be permitted to participate as provided under the conditions of chapter 11 of the Rules Regulating The Florida Bar as amended from time to time.
(k) Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client.
Commentary
1997 Amendment. Originally, the rule provided that the follow-up filing had to occur within ten days. In the 1997 amendment to the rule, that requirement was modified to provide that the follow-up filing must occur “immediately” after a document is electronically filed. The “immediately thereafter” language is consistent with language used in the rules of procedure where, in a somewhat analogous situation, the filing of a document may occur after service. See, e.g., Florida Rule of Civil Procedure 1.080(d) (“All original papers shall be filed with the court either before service or immediately thereafter”) (emphasis added). “Immediately thereafter” has been interpreted to mean “filed with reasonable promptness.” Miami Transit Co. v. Ford, 155 So.2d 360 (Fla.1963).
The use of the words “other person” in this rule is not meant to allow a nonlawyer to sign and file pleadings or other papers on behalf of another. Such conduct would constitute the unauthorized practice of law.
2003 Amendment. Rule Regulating the Florida Bar 4-1.12(c), which addresses the imputed disqualification of a law firm, should be looked to in conjunction with the rule 2.060(b) restriction on representation by a former judicial staff attorney or law clerk.
RULE 9.360. PARTIES
(a) Joinder. A party to the cause in the lower tribunal who desires to join in a proceeding as a petitioner or appellant shall file a notice to that effect within 10 days of service of the petition or notice or within the time prescribed by rule 9.110(b), whichever is later.
(b) Attorneys, Representatives, and Guardians Ad Litem. Attorneys, representatives, and guardians ad litem in the lower tribunal shall retain their status in the court unless others are duly appointed or substituted; however, for limited representation proceedings under Florida Family Law Rule of Procedure 12,040, representation terminates upon the filing of a notice of completion titled “Termination of Limited Appearance” pursuant to rule 12.040(c).
(c) Substitution of Parties.
(1) If substitution of a party is necessary for any reason, the court may so order on its own motion or that of a party.
(2) Public officers as parties in their official capacities may be described by their official titles rather than by name. Their successors in office shall be automatically substituted as parties.
(3) If a party dies while a proceeding is pending and that party’s rights survive, the court may order the substitution of the proper party on its own motion or that of any interested person.
(4) If a person entitled to file a notice dies before filing and that person’s rights survive, the notice may be filed by the personal representative, attorney of record, or, if none, by any interested person. Following filing, the proper party shall be substituted.
*406 Committee Notes
1977 Amendment. This rule is intended as a simplification of the former rules with no substantial change in practice.
Subdivision (a) is a simplification of the provisions of former rule 3.11(b), with modifications recognizing the elimination of assignments of error.
Subdivision (b) retains the substance of former rule 3.11(d).
Subdivision (c)(1) substantially simplifies the procedure for substituting parties. This change is in keeping with the overall concept of this revision that these rules should identify material events that may or should occur in appellate proceedings and specify in general terms how that event should be brought to the attention of the court and how the parties should proceed. The manner in which these events shall be resolved is left to the courts, the parties, the substantive law, and the circumstances of the particular case.
Subdivision (c)(2) is new and is intended to avoid the necessity of motions for substitution if the person holding a public office is changed during the course of proceedings. It should be noted that the style of the case does not necessarily change.
Subdivision (c)(4) is new, and is intended to simplify the procedure and avoid confusion if a party dies before an appellate proceeding is instituted. Substitutions in such cases are to be made according to subdivision (c)(1).
RULE 12,040. ATTORNEYS
(a) Limited Appearance. An attorney of record for a party, in a family law matter governed by these rules, shall be the attorney of record throughout the same family law matter, unless at the time of appearance the attorney files a notice, signed by the party, specifically limiting the attorney’s appearance only to the particular proceeding or matter in which the attorney appears.
(b) Withdrawal or Limiting Appearance.
(1) Prior to the completion of a family law matter or prior to the completion of a limited appearance, an attorney of record, with approval of the court, may withdraw or partially withdraw, thereby limiting the scope of the attorney’s original appearance to a particular proceeding or matter. A motion setting forth the reasons must be filed with the court and served upon the client and interested persons.
(2) The attorney shall remain attorney of record until such time as the court enters an order, except as set forth in subdivision (c) below.
(c) Scope of Representation. If an attorney appears of record for a particular limited proceeding or matter, as provided by this rule, that attorney shall be deemed “of record” for only that particular proceeding or matter. Any notice of limited appearance filed shall include the name, address and telephone number of the attorney and the name, address and telephone number of the party. At the conclusion of such proceeding or matter, the attorney’s role terminates without the necessity of leave of court, upon the attorney filing notice of completion of limited appearance. The notice, which shall be titled “Termination of Limited Appearance,” shall include the names and last known addresses of the person(s) represented by the withdrawing attorney-
id) Preparation of Pleadings or Other Documents. A party who files a pleading or other document of record pro se with the assistance of an attorney shall certify that the party has received assistance from an attorney in the preparation of the pleading or other document. The name, *407 address and telephone number of the party shall appear on all pleadings or other documents filed with the court.
(e) Notice of Limited Appearance. Any pleading or other document filed by a limited appearance attorney shall state in bold type on the signature page of that pleading or other document: “Attorney for [Petitioner] [Respondent] [attorney’s address arid telephone number] for the limited purpose of [matter or proceeding]” to be followed by the name of the petitioner or respondent represented and the current address and telephone number of that par-ÍZ:
(f) Service. During the attorney’s limited appearance, all pleadings or other documents and all notices of hearing shall be served upon both the attorney and the party. If the attorney receives notice of a hearing that is not within the scope of the limited representation, the attorney- shall notify the court and the opposing party that the attorney will not attend the court proceeding or hearing because it is outside the scope of the representation.
RULE 4-1.2. OBJECTIVES AND SCOPE OF REPRESENTATION
(a) Lawyer to Abide by Client’s Decisions. A lawyer shall abide by a client’s decisions concerning the objectives of representation, subject to subdivisions (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client’s decision whether to make or accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the Ghent’s decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.
(b) No Endorsement of Client’s Views or Activities. A lawyer’s representation of a client, including representation by appointment, does not constitute an endorsement of the client’s political, economic, social, or moral views or activities.
(c) Limitation of Objectives and Scope of Representation. Alf not prohibited by law or rule, a lawyer and client may agree to limit the objectives or scope of the representation if the limitation is reasonable under the circumstances and the client consents in writing after consultation. If the attorney and client agree to limit the scope of the representation, the lawyer shall advise the client regarding applicability of the rule prohibiting communication with a represented person.
(d) Criminal or Fraudulent Conduct. A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.
(e) Limitation on Lawyer’s Conduct. When a lawyer knows or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or by law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer’s conduct.
Comment
SeopeObjectives of representation
Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer’s professional obligations. Within those limits, a client also has a right to *408 consult with the lawyer about the means to be used in pursuing those objectives.- At the same time, a lawyer is not required to pursue objectives-or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer’s scope of authority in litigation varies among jurisdictions.
In a case in which the client appears to be suffering mental disability, the lawyer’s duty to abide by the client’s decisions is to be guided by reference to rule 4-1.14.
Independence from client’s views or activities
Legal representation should not be denied to people who are unable to afford legal services or whose cause is controversial or the subject of popular disapproval. By the same token representing a client does not constitute approval of the client’s views or activities.
Services limited in objectives, scope or means
The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer’s services are made available to the client. . For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The terms upon which representation is undertaken may exclude specific objectives or means. Such limitations may exclude objectives or means that the lawyer regards as repugnant or imprudent, or which the client regards as financially impractical.
Although this rule affords the lawyer and client substantial latitude to limit the representation if not prohibited by law or rule, the limitation must be reasonable under the circumstances. If, for example, a client’s objective is limited to securing general information about the law the client needs in order to handle a common' and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer’s services will be limited to a brief consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. In addition, a lawyer and client may agree that the representation will be limited to providing assistance out of court, including providing advice on the operation of the court system and drafting pleadings and responses. If the lawyer assists a pro se litigant by drafting any document to be submitted to a court, the lawyer is not obligated to sign the document. However, the lawyer must indicate “Prepared with the assistance of counsel” on the document to avoid misleading the court, which otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer. If not prohibited by law or rule, a lawyer and client may agree that any in-court representation in a family law proceeding be limited as provided for in Family Law Rule of Procedure 12.040. For example, a lawyer and client may agree that the lawyer will represent the client at a hearing *409 regarding child support and not at the final hearing or in any other hearings. For limited in-court representation in family law proceedings, the attorney shall communicate to the client the specific boundaries and limitations of the representation so that the client is able to give informed consent to the representation.
Regardless of the circumstances, a lawyer providing limited representation forms an attorney-client relationship with the litigant, and owes the client all attendant ethical obligations and duties imposed by the Rules Regulating The Florida Bar, including, but not limited to, duties of competence, communication, confidentiality and avoidance of conflicts of interest. Although an agreement for limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and law. Thus, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer’s services or the right to settle litigation that the lawyer might wish to continue.
Criminal, fraudulent, and prohibited transactions
A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client’s conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not assist a client in conduct that the lawyer knows or reasonably should know to be criminal or fraudulent. There, is a critical distinction between presenting an analysis of legal aspects of questionable conduct- and recommending the means by which a crime or fraud might be committed with impunity.
When the client’s course of action has already begun and is continuing, the lawyer’s responsibility is especially delicate. The lawyer is not permitted to reveal the client’s wrongdoing, except where permitted or required by rule 4-1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.
Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
Subdivision (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability. Subdivision (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last sentence of subdivision (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
RULE 4-4.2. COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
(a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another *410 lawyer in the matter, unless the lawyer has the consent of the other lawyer. Notwithstanding the foregoing, an attorney may, without such prior consent, communicate with another’s client in order to meet the requirements of any court rule, statute or contract requiring notice or service of process directly on an adverse party, in which event the communication shall be strictly restricted to that required by the court rule, statute or contract, and a copy shall be provided to the adverse party’s attorney.
(b) An otherwise unrepresented person to whom limited representation is being provided or has been provided in accordance with Rule Regulating the Florida Bar 4-1.2 is considered to be unrepresented for purposes of this rule unless the opposing lawyer knows of, or has been provided with, a written notice of appearance under which, or a written notice of the time period during which, the opposing lawyer is to communicate with the limited representation lawyer as to the subject matter within the limited scope of the representation.
Comment
This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between '2 organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Aso, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this rule prohibits communications by a lawyer for 1 party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by the agent’s or employee’s own counsel, the consent by that counsel to a communication will be sufficient for- purposes of this rule. Compare rule 4 — 3.4(f). This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
RULE 4-4.3. DEALING WITH UNREPRESENTED PERSONS
(a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer’s role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.
(b) An otherwise unrepresented person to whom limited representation is being provided or has been provided in accordance with Rule Regulating the Florida Bar 4-1.2 is considered to be unrepresented for purposes of this rule unless the opposing lawyer knows of,- or has been provided with, a written notice of appearance under which, or a written notice of time period during which, the opposing lawyer is to communicate with the limited representation lawyer as to the subject *411 matter within the limited scope of the representation.
Comment
An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer’s representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.

. We have jurisdiction. See art. V, §§ 2(a), 15, Fla. Const.

. The FCSC, created in 1994, see In re Report of the Commission on Family Courts, 633 So.2d 14, 18 (Fla.1994), was comprised of judges and lawyers with knowledge of family law matters. In 2002, the FCSC was merged with the Children's Court Improvement Committee to form the Steering Committee on Families and Children in the Court. See In re Steering Committee on Families and Children in the Court, Fla. Admin. Order No. AOSC02-31 (Sept. 27, 2002) (on file with Clerk, Fla. Sup.Ct.).

. The committee sent the proposed amendments to the following groups: the Family Law Rules Committee, the Civil Procedure Rules Committee, the Small Claims Rules Committee, the Professional Ethics Committee, the Family Law Section of The Florida Bar, the Trial Lawyers Section of The Florida Bar, the Young Lawyers Division of The Florida Bar, the FCSC, the Conference of Circuit Court Judges, the Florida Chapter of the American Academy of Matrimonial Lawyers, and the Probate Rules Committee. The Family Law Rules Committee, the Family Law Section of The Florida Bar, the FCSC, and the Conference of Circuit Court Judges supported the proposals. The Probate Rules Committee voted to not oppose the proposals. Three groups either were opposed to or voted not to support the proposals: the Small Claims Rules Committee, the Executive Council of The Florida Bar Trial Lawyers Section, and the Young Lawyers Division of The Florida Bar. The Civil Procedure Rules Committee and the Florida Chapter of the American Academy of Matrimonial Lawyers did not make any comments regarding the proposals, and the Professional Ethics Committee took no formal action. None of the groups that opposed the proposals filed comments with this Court.

. As noted in one law review article, it is better to have one oar than to be without a boat. See Mary Helen McNeal, Having One Oar or Being Without a Boat: Reflections on the Fordham Recommendations on Limited Legal Assistance, 67 Fordham L.Rev. 2617 (1999).